CITY OF MIAMI, a political subdivision of the State of Florida, Plaintiff,

v.

METROPOLITAN DADE COUNTY, a political subdivision of the State of Florida, The State of Florida, The Miami Herald Publishing Co., a division of Knight–Ridder Newspaper, Inc., a Florida Corporation, Defendants.

The MIAMI HERALD PUBLISHING CO., A DIVISION OF KNIGHT–RIDDER NEWSPAPER, INC., a Florida Corporation, Cross–Plaintiff,

v.

CITY OF MIAMI, and its agency the City of Miami Police Department and Metropolitan Dade County and its agency the Metro–Dade Police Department, Cross–Defendants.

CITY OF MIAMI, a political subdivision of the State of Florida, Third Party Cross–Plaintiff,

v.

UNITED STATES of America, Third Party Cross–Defendant.

No. 90–1994–CIV.

United States District Court, S.D. Florida.

Sept. 12, 1990.

Sanford L. Bohrer, Jerold I. Budney, Samuel A. Terilli, Jr., Miami, Fla., for The Miami Herald Pub., Co., a div. of Knight–Ridder, Inc.

Jorge L. Fernandez, Beverley A. Linton, Miami, Fla., for City of Miami.

Robert A. Ginsburg, Roy Wood, Miami, Fla., for Metropolitan Dade County.

Richard L. Shiffrin, Miami, Fla., for State of Fla.

Dexter W. Lehtinen, Robert K. Senior, Daniel S. Gelber, Miami, Fla., for U.S.

## MEMORANDUM OPINION

SCOTT, District Judge.

This action involves the efforts of The Miami Herald Publishing Co., a division of Knight Ridder, Inc. ("The Herald") to obtain certain photographs, negatives, contact prints, Polaroids, and slides (collectively, "photographs") from the City of Miami ("City"), the State of Florida's Office of the State Attorney for the Eleventh Judicial Circuit (the "State Attorney"), and Metropolitan Dade County ("County") under Florida's Public Records Act, which is set forth in Chapter 119, Florida Statutes.

### I. *Factual and Procedural Background*

Both the procedural posture and factual background of this case are quite interesting to say the least. On August 20, 1990, pursuant to Florida's Public Records Act, The Herald made requests to the City and the County to inspect and copy any and all photographs pertaining to a federal criminal prosecution, *United States of America v. Pablo Camacho et al. ("Camacho")* [1]. *Camacho* is set to commence for trial on October 9, 1990.[2] In support of these requests, the Herald argued that pursuant to Florida Statute section 119.011(3)(c)(5), once the United States Attorney's Office ("USAO") gave the defendants in *Camacho* copies [3] of the photographs, they were no longer exempt from disclosure.[4]

On August 21, 1990, the City filed a Complaint For Declaratory Relief and Motion for Temporary Injunction against the County, the State of Florida, and the Herald, in the Circuit Court of the Eleventh Judicial Circuit In and For Dade County, Florida ("state court"). The complaint sought (1) declaratory relief as to the City's duty under Chapter 119 to make their photographs available to the Herald and in addition, (2) to restrain the County and the State Attorney from releasing photographs in their possession. On August 23, 1990, a hearing was held in state court. The Court orally denied the City's request for a temporary restraining order and deferred ruling, until August 27, 1990, on the substantive issues presented by the City and the Herald.[5] The County and State Attorney indicated they would not release the photographs in their possession pending the resolution of the matter.

Thereafter, on August 24, 1990, the City served a summons and a third party cross-complaint on the USAO, naming the United States of America as a third party cross-defendant. In its third party cross-complaint, the City seeks from the USAO the return of all "photographs, etc." which have been

---

**1.** Case Numbers: 89–0650–Cr–Marcus and 90–0839–Cr–Marcus.

**2.** Certain of the City's law enforcement officers and the State Attorney have cooperated with the United States Attorney in regard to the prosecution. As part of such cooperation, the City delivered some 1200 of the photographs, and the State Attorney delivered some 65 of the photographs, to the United States Attorney. The County delivered several hundred of the photographs to the United States Attorney, but retained the originals or duplicates.

**3.** Apparently, a duplicate set of all photographs was provided.

**4.** As part of the pre-trial discovery in *Camacho*, copies of the photographs were given to the defendants.

**5.** Prior to the hearing, the Herald filed an Answer, Counterclaim and Cross-claim asserting their right to receive all photographs in the possession of the City and the County which the USAO had given to the defendants in *Camacho*.

requested by the Herald. Additionally, the City demands judgment for any and all damages adjudged against them and in favor of the Herald pursuant to section 119.-12.[6]

On August 27, 1990, the USAO filed a Petition for Removal to the United States District Court for the Southern District of Florida. On August 29, 1990, the Herald filed a Motion to Remand and requested an emergency hearing on the motion. An emergency hearing was held on September 4, 1990, before the Honorable Thomas E. Scott. Prior to the hearing, the City also filed an amended third party cross-complaint adding the Attorney General and the United States Attorney, as third party cross-defendants.

The District Court denied the Herald's Motion to Remand, concluding that removal was proper pursuant to Title 28 U.S.C. §§ 1441 and 1442. Following a one-hour recess, the District Court granted the City's *ore tenus* motion to drop the Attorney General as a party to the action. Following the presentation of the respective parties' positions, the Court instructed the parties to file memoranda of law by September 6, 1990, 5:00 P.M.[7] The Court made one additional preliminary ruling, finding that the City had standing, under the circumstances of this case, to prevent other state agencies from disclosing the photographs sought by the Herald.

II. *The Florida Public Records Act*[8]

The pertinent portions of Chapter 119, Florida Statutes, provide:

**119.01 General state policy on public records**

It is the general policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person.

. . . .

**119.011 Definitions**

For the purpose of this chapter:

**(1) "Public records"** means all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.

(2) "Agency" means any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law and any other public or private agency, person, or partnership, corporation, or business entity acting on behalf of any public agency.

(3)(a) "Criminal intelligence information" means

. . . .

(b) "Criminal investigative information" means information with respect to an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including but not limited to, information derived from laboratory tests, reports of investigators or informants, or any type of surveillance.

**(c) "Criminal ... investigative information" shall not include:**

. . . .

5. Documents given or required by law or agency to be given to the person arrested. . . .

. . . .

(d) The word "active" shall have the following meaning:

. . . .

2. Criminal investigative information shall be considered "active" as long as it

---

**6.** *See* Fla.Stat. § 119.12 (1982 & Supp.1990).

**7.** At the hearing, the State Attorney and the County characterized themselves as stakeholders who essentially had declined to produce the photographs in their possession in deference to the City and the United States Attorney, which had requested that they not produce them to the Herald. Accordingly, the State Attorney and the

County continue to decline to produce the photographs despite a state court order, prior to removal, holding that the City is not entitled to a temporary restraining order against the County or the State Attorney preventing them from producing the photographs in their possession.

**8.** (1982 & Supp.1990).

is related to an ongoing investigation which is continuing with a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future.

In addition, ... criminal investigative information shall be considered "active" while such information is directly related to pending prosecutions or appeals. The word "active" shall not apply to information in cases which are barred from prosecution under the provisions of s. 775.15 or other statute of limitation.

### 119.07 Inspection and examination of records; exemptions

(1)(a) Every person who has custody of public records shall permit the records to be inspected and examined by any person desiring to do so ...

. . . .

(2)(a) A person who has custody of a public record and who asserts that an exemption provided in subsection (3) ... applies to a particular record shall delete or excise from the record only that portion of the record with respect to which an exemption has been asserted and validly applies, and such person shall produce the remainder of such record for inspection and examination.

(b) ... If an exemption is alleged to exist under or by virtue of paragraph (d) of subsection (3), an inspection in camera will be discretionary with the court. If the court finds that the asserted exemption is not applicable, it shall order the public record or part thereof in question to be immediately produced for inspection, examination, or copying as requested by the person seeking such access.

. . . .

(3) . . . .

(d) Active criminal intelligence information and active criminal investigative information are exempt from the provisions of subsection (1).

. . . .

### III. Whether the Photographs Are "Active" Criminal Investigative Information and, Therefore, Exempt from Disclosure

■ It is undisputed, based on the unambiguous language of the statute set forth above and Florida case law interpreting the Public Records Act, that section 119.-07(3)(d) exempts from public disclosure criminal investigative information so long as it is deemed "active." *State v. Kokal,* 562 So.2d 324 (Fla.1990); *In re Grand Jury Invest. Spring Term 1988,* 543 So.2d 757 (Fla. 2d DCA 1989).[9] However, because six categories of information listed under section 119.011(3)(c) are *expressly excluded* from the definition of "criminal investigative information," if the photographs at issue fall within one of those section 119.011(3)(c) categories, they are subject to disclosure under this statute. *Bludworth v. Palm Beach Newspapers, Inc.* 476 So.2d 775, 779 n. 1 (Fla. 4th DCA 1985); *see also* cases cited *infra* note 15.

The Herald maintains that the photographs are "[d]ocuments given or required by law or agency rule to be given to the person arrested ..." under section 119.-011(3)(c)(5). Specifically, the Herald argues that once the USAO gave the defendants in *Camacho* copies of the photographs, section 119.011(3)(c)(5) was triggered and the photographs became public documents. The Herald further argues that because the photographs fall into this category, the "active" criminal investigative information exception to disclosure cannot apply.

At the outset, the Court finds, without hesitation, that based on the in camera testimony of Lieutenant Charles Reynolds and Sergeant Luis Albuerne of the City of Miami Police Department, Homicide Unit, as well as exhibits introduced at the hearing, the photographs are "active" criminal investigative information. *See* Sealed Transcript of In Camera Proceeding Before the Honorable Thomas E. Scott, dated September 5, 1990. *Accord Kokal,* 562 So.2d

**9.** For the definition of active criminal investigative information under Chapter 119, *see supra* text of statute at 6.

at 326; *Tribune Co. v. Public Records*, 493 So.2d 480 (Fla. 2d DCA 1986); *Florida Freedom Newspapers, Inc. v. Dempsey*, 478 So.2d 1128, 1130–31 (Fla. 1st DCA 1985).

IV. *Whether the Actions of the USAO During the Discovery Process of a Federal Criminal Prosecution are Governed by Section 119.011(3)(c)(5)*

▆▆▆ Alternatively, the Court finds that the photographs, which were provided by the USAO to the defendants in *Camacho* during pretrial discovery are not "[d]ocuments required by law or agency rule to be given to the person arrested. . . ." First and foremost, neither the City or any other *state* agency gave the photographs "to the person arrested."[10] The photographs were provided by the USAO to the defendants in *Camacho* in a federal criminal prosecution pursuant to the Federal Criminal Rules of Procedure relating to discovery. While the Herald argues that the USAO gave the photographs to the defendants "in much the same manner as they would have been [provided] under [Florida] Rule [of Criminal Procedure] 3.220 in a state prosecution[,]" and therefore, "[f]or the purpose of this proceeding, any differences in the timing or manner of delivery are irrelevant,"[11] this argument must fail. Under the definitional section of the statute, this Court finds that the term "agency" does not contemplate governmental entities other than those created or established pursuant to Florida law.[12] Clearly, the USAO is not a governmental entity created or established pursuant to Florida law. Accordingly, no state agency, as contemplated by the statute, performed the act of providing any items to any arrested person. Likewise, the only parties to whom a state agency provided items were the USAO and the Federal Bureau of Investigation, neither of

which are even arguably "arrested persons."

It is important to recognize that if Chapter 119, Florida Statutes, were interpreted to apply to discovery proceedings outside the jurisdiction of the State of Florida, both the State of Florida and the Federal Government would lose control of their criminal investigations. The clear reading of section 119.011(3)(c) demonstrates that it was intended to apply to criminal proceedings within the jurisdiction of the State of Florida. The Herald's interpretation of section 119.011(3)(c)(5), however, absurdly imputes the behavior of one sovereign, the Federal Government, to another, the State of Florida. There should be no doubt in anyone's mind that the Florida Legislature did not intend this result. While the actions of the State of Florida in releasing documents and/or discovery items[13], are certainly subject to the mandates of Chapter 119, the actions of the Federal Government are not. The City of Miami should not be penalized for assisting the Federal Government in its investigations.[14] Likewise, the actions of the Federal Government should not be dictated by the Florida Legislature.

V. *Whether the Photographs Are "Documents" Pursuant to Section 119.011(3)(c)(5)*

A second, arguable, basis for finding that the photographs at issue are not "[d]ocuments required by law or agency rule to be given to the person arrested. . . ." stems from a common sense meaning of the word "documents." If the Florida Legislature had intended "photographs" to be subject to disclosure under subsection 119.011(3)(c)(5), it should have included the word "photographs" in that subsection. This conclusion is strengthened by the appearance of the words "doc-

---

**10.** The USAO is not a state governmental entity created or established pursuant to Florida law. Moreover, under the definitional section of the statute, the term "agency" does not contemplate entities other than those created or established pursuant to Florida law.

**11.** *See* Herald's Proposed Order/Memorandum Opinion, filed September 6, 1990, at 5.

**12.** For the definition of agency under Chapter 119, *see supra* text of statute at 5.

**13.** *See infra* section V.

**14.** To date, no arrests have been made by any state agency pursuant to the City's ongoing investigation.

uments" and "photographs" in the definitional subsection 119.011(1), while only the word "documents" appears in subsection 119.011(3)(c)(5). We believe this issue should be addressed by the Florida Supreme Court or Legislature.[15]

### VI. Conclusion [16]

Accordingly, the Herald's request that the photographs be disclosed is DENIED.

DONE and ORDERED.

**15.** While the Court recognizes the existence of several Florida District Court of Appeal decisions which broadly construe the term "documents" to include all "information" released to an arrested person, in all but one of these cases, it cannot be said conclusively that the "information" sought to be disclosed was anything other than "documents." Moreover, this Court would suggest that in the first of the series, *Satz v. Blankenship,* 407 So.2d 396 (Fla. 4th DCA 1981), the Fourth District may have simply been wrestling with the idea that if the tape recordings had been provided to defendant's counsel in "transcribed/document form" they would have clearly been subject to disclosure under the Public Records Act. *See also Bludworth v. Palm Beach Newspapers, Inc., supra; Tribune Co. v. Public Records, supra; Downs v. Austin,* 522 So.2d 931 (Fla. 1st DCA 1988).

**16.** Having reviewed, in camera, the subject photographs, the Court also finds the competing considerations involved in limiting pretrial publicity to be highly relevant to this case. However, in light of the determination herein, we find it unnecessary to address this issue. *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).