707 So.2d 714 (1998)
STATE of Florida, Appellant,
v.
Judy A. BUENOANO, et al., Appellees.
No. 92442.
Supreme Court of Florida.
March 11, 1998.
Robert A. Butterworth, Attorney General and Richard B. Martell, Chief, Capital Appeals, Tallahassee; Candance M. Sabella and Kay V. Blanco, Assistant Attorneys General, Tampa; and Lawson Lamar, State Attorney and Paula C. Coffman, Assistant State Attorney, Orlando, for Appellant.
Gregory C. Smith, Capital Collateral Counsel, Northern Region; Sylvia Smith, Assistant CCC-NR and Robert Friedman, CCC-NR, Office of the Capital Collateral Representative, Tallahassee, for Appellees.
Lucy L. Thomson, Senior Attorney, Task Force on the FBI Laboratory, Criminal Division, U.S. Department of Justice, Washington, DC; and Elizabeth R. Beers, Assistant General Counsel, Federal Bureau of Investigation, Washington, DC, for Amicus Curiae, U.S.
Gregg D. Thomas and Kimberly A. Stott of Holland and Knight LLP, Tampa; and David S. Bralow and Susan L. Turner of Holland & Knight LLP, Orlando, for New York Times Regional Newspapers and Sentinel Communications Company, Intervenors.
PER CURIAM.
We have on appeal the order of the trial court denying the State's motion for protective *715 order. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
In January 1997, Capital Collateral Regional Counsel for the Northern Region (CCRC), on behalf of Judy A. Buenoano, a prisoner under sentence of death, sent letters to several agencies, including the Ninth Judicial Circuit State Attorney, requesting records pursuant to chapter 119, Florida Statutes (1997). Each agency sent a written response indicating it would not produce the records because Buenoano did not comply with Florida Rule of Criminal Procedure 3.852.
On April 15, 1997, Buenoano responded by filing, with the trial court, petitions for mandamus against each of the agencies. She sought orders compelling the agencies to produce the requested records. Each of the three panels assigned to Buenoano's petitions ordered that the petitions be treated as motions to compel or complaints in the trial court pursuant to rule 3.852(f).
The governor signed a warrant setting Buenoano's execution for March 30, 1998. Thereafter, the trial court held a hearing on Buenoano's motions to compel. On January 8, 1998, the court issued an order denying relief.
After the trial court issued its order denying relief, the State Attorney filed a "Request for In Camera Inspection and Judicial Determination of Prosecutorial Obligation." The State Attorney's motion was a response to Buenoano's assertion during the hearing on the motion to compel that the State Attorney possessed documents regarding the Office of the Inspector General's recent investigation into the questionable practices of the FBI crime lab, in particular the practices of Special Agent Roger Martz. Martz testified during Buenoano's Escambia County attempted first-degree murder trial concerning the contents of capsules Buenoano allegedly had given the victim of the Escambia County crime. A stipulated synopsis of Martz's testimony was introduced as Williams[1] rule evidence in Buenoano's Orange County first-degree murder trial, which resulted in a conviction and the imposition of the death sentence.
In its motion and argument to the trial court, the State Attorney explained that it was under the good faith belief that Buenoano was not entitled to the documents under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but that it was submitting them to the court in order to avoid delaying the pending death warrant. The trial court orally granted the motion and the State Attorney, thereafter, submitted to the trial court a set of federal documents that had not been disclosed to Buenoano. The State Attorney had received the documents in December 1997. These documents were sent to the State Attorney with a transmittal letter that provided the terms and conditions for use of the documents. That letter provided:
These documents are not public record and should only be disclosed pursuant to a protective order. This material may contain references to individuals whose identification is protected by the Privacy Act, and to other sensitive matters. Prior to disclosing any of this material, please consult with me so that we can be sure that your impending disclosure does not adversely impact on other matters. At the conclusion of your case or at such earlier time as you determine that you no longer have a need for this material, please return all copies to me. A sample protective order is enclosed for your use.
The trial court reviewed the documents and found that the State had no obligation under Brady to provide Buenoano with the materials.
On January 20, 1998, the State Attorney filed a "Supplemental Request for In Camera Inspection and Judicial Determination of Prosecutorial Obligation." The motion indicated that the State Attorney had additional federal documents that inadvertently had not been included with the first set of documents submitted for in-camera inspection. The trial court denied the supplemental motion. *716 The State Attorney, apparently overlooking the transmittal letter outlining the terms and conditions of disclosure, voluntarily provided to Buenoano the federal documents which were the subject of the supplemental request for inspection. The State Attorney also made the documents a part of the court record. Specifically, the documents were included in Volume IV.
Buenoano appealed the trial court's orders and the State Attorney for the Ninth Judicial Circuit asked this Court for an emergency protective order covering the federal documents sealed by the trial court and the documents contained in Volume IV. The State Attorney sought the protective order after realizing that some of the documents, including documents it volunteered to Buenoano, were under seal in other state and federal cases and should not have been given to Buenoano absent a protective order.
This Court issued a series of orders. In the first order, the Court directed that disclosure of Volume TV be limited to Buenoano, her counsel, her investigators, and her experts until further order by the Court. In a subsequent order, the Court directed the State Attorney to give the remaining sealed documents to Buenoano with the same limitations it had placed on the records in Volume IV in its prior order. This limitation on access was temporary and the trial court was ordered to conduct a hearing on a motion for protective order to be filed by the State Attorney by February 11, 1998. This Court also transferred to the trial court the New York Times Regional Newspapers and the Sentinel Communications Company's motions to intervene.
The trial court granted the media's motions to intervene. Thereafter, the trial court issued an order unsealing all the documents the State did not want covered by the protective order. That left a total of ten documents, all of which were in Volume IV of the record, for which the State sought a protective order.
With regard to the ten documents, the trial court relied on section 119.011(3)(c)5, Florida Statutes (1997),[2] and found that the exemptions in sections 119.072[3] and 119.07(3)(b)[4] were not applicable to the documents, because they were already made public when given to the defendant and voluntarily filed with the court. Additionally, the trial court found Florida Rule of Judicial Administration 2.051, which provides for public access to judicial records, required release of the federal documents because the documents did not fall within any of the criteria set forth in subdivision (c)(9).[5] The court ordered the *717 remaining ten documents unsealed if the State did not file notice of appeal by 5 p.m. on February 23, 1998. The State Attorney appealed and the Department of Justice, which did not seek to intervene at the trial level, filed a motion to intervene in this Court. The Court granted the motion, which it treated as a motion to file a brief as amicus curiae pursuant to Florida Rule of Appellate Procedure 9.370.
We find the trial court erred in denying the State's motion for protective order. The documents at issue here were made available to the State Attorney by the United States Government on the conditions outlined in the transmittal letter of December 22, 1998:
These documents are not public record and should only be disclosed pursuant to a protective order. This material may contain references to individuals whose identification is protected by the Privacy Act, and to other sensitive matters. Prior to disclosing any of this material, please consult with me so that we can be sure that your impending disclosure does not adversely impact on other matters. At the conclusion of your case or at such earlier time as you determine that you no longer have a need for this material, please return all copies to me. A sample protective order is enclosed for your use.
It is clear from the transmittal letter that the documents were made available to the State Attorney by the federal government on a "confidential or similarly restricted basis" and therefore this case is controlled by section 119.072. That provision of Florida's Public Records Act provides:
Criminal intelligence or investigative information obtained from out-of-state agencies. Whenever criminal intelligence information or criminal investigative information held by a non-Florida criminal justice agency is available to a Florida criminal justice agency based only on a confidential or similarly restricted basis, the Florida criminal justice agency may obtain and use such information in accordance with the conditions imposed by the providing agency.
The provision recognizes the existence of "loan agreements" between a Florida criminal justice agency and non-state agencies like that provided for in the federal government's transmittal letter in this case. See United States v. Napper, 694 F.Supp. 897, 901 (N.D.Ga.1988) (recognizing that where city violated loan agreement concerning federal documents, federal government was entitled to cancel loan agreement and retrieve documents).
It is undisputed that the documents at issue here were criminal intelligence or investigative information, within the meaning of section 119.072, at the time the documents were made available to the State Attorney. Section 119.011(3)(c)5 excludes from the definition of "criminal intelligence information" and "criminal investigative information" "[d]ocuments given ... to the person arrested." Although the documents were "given" to Buenoano, they were given to her inadvertently by the State Attorney in violation of the terms of the loan agreement and section 119.072. We cannot agree that the fact that the State Attorney gave the documents to Buenoano and placed them in the court record in violation of the conditions imposed by the federal government changed the nature of the documents. If we were to agree with the trial court's interpretation of the chapter 119 provisions at issue here, we would be allowing the definitional section of that chapter to override the express conditions of the federal loan agreement and the clear directives of section 119.072.
Reading the provisions as we do is consistent with the obvious purpose behind section 119.072to encourage cooperation between non-state and state criminal justice agencies. If we were to read section 119.072 to allow disclosure by a Florida agency of information *718 classified as confidential by the lending agency, non-state agencies would be reluctant to provide information in the future. The legislature could not have intended section 119.072 to be applied so as to chill the exchange of information in this manner. Moreover, the federal government should not be penalized for sharing information with the State. Cf. City of Miami v. Metropolitan Dade County, 745 F.Supp. 683, 687 (S.D.Fla. 1990) (recognizing section 119.011(3)(c)5 should not be construed in such a manner as to penalize city for assisting federal government in its investigations by sharing criminal investigative information). The federal government and its criminal justice agencies should be encouraged to provide Florida law enforcement agencies with any information that has the potential to assist our courts in reaching a just determination in criminal proceedings.
Rule of Judicial Administration 2.051 does not change our conclusion that the documents at issue are not subject to public inspection. Although the documents when given to Buenoano were placed in Volume IV of the court record, rule 2.051(c)(8) specifically adopts statutory public records exemptions. See Florida Publ'g Co. v. State, 706 So.2d 54 (Fla. 1st DCA 1998). That rule exempts from public access "all records presently deemed to be confidential by ... Florida Statutes." Since we have determined that the documents are exempt from public access under chapter 119, they are likewise exempt under rule 2.051.
Moreover, our holding is consistent with federal law which establishes that the federal transmittal letter setting forth the loan agreement controls disclosure of these documents. The transmittal letter is similar in nature to the declaration included on the documents submitted by the FBI to the city in United States v. Napper, 694 F.Supp. 897 (N.D.Ga.1988). In Napper, the FBI provided the City of Atlanta Police Department with information regarding the "Atlanta Child Murder Cases." The FBI gave the information with the qualification that it was being loaned and it was not to be distributed outside the agency. However, the media successfully sued under state law to obtain access to information about the case and the city thereafter made available to the public documents it received from the FBI. 694 F.Supp. at 899.
The FBI filed an action in federal court after its motion to intervene in state proceedings was denied. Id. The FBI sought the return of its documents from the city and media. The federal court held the city violated the terms of the loan agreement and that the FBI was entitled to cancel the agreement and retrieve its documents pursuant to 28 U.S.C. § 534(b). The federal court also held that the supremacy clause mandated that its order supersede any disclosure requirements placed on the documents imposed by the state court. 694 F.Supp. at 901. We believe that just as the state law in Napper could not supersede the federal loan agreement at issue there, section 119.011(3)(c)5 cannot be read to override the terms of the federal transmittal letter which accompanied these documents.
In conclusion we note that, according to the Department of Justice, the media can obtain access to public versions of the documents at issue here by filing an official Freedom of Information Act request. Thus, our ruling here facilitates the exchange of important information between federal and state law enforcement agencies, while in no way interfering with the media's access to public documents.
Accordingly, we reverse the trial court's order and remand for entry of a protective order consistent with this opinion. It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] Section 119.011(3)(c)5 provides:

(c) "Criminal intelligence information" and "criminal investigative information" shall not include: ...
5. Documents given or required by law or agency rule to be given to the person arrested, except as provided in s. 119.07(3)(f), and, except that the court in a criminal case may order that certain information required by law or agency rule to be given to the person arrested be maintained in a confidential manner and exempt from the provisions of s. 119.07(1) until released at trial if it is found that the release of such information would:
a. Be defamatory to the good name of a victim or witness or would jeopardize the safety of such victim or witness; and
b. Impair the ability of a state attorney to locate or prosecute a codefendant.
[3] Section 119.072 provides:

Criminal intelligence or investigative information obtained from out-of-state agencies.Whenever criminal intelligence information or criminal investigative information held by a non-Florida criminal justice agency is available to a Florida criminal justice agency based only on a confidential or similarly restricted basis, the Florida criminal justice agency may obtain and use such information in accordance with the conditions imposed by the providing agency.
[4] Section 119.07(3)(b) exempts from public access "[a]ctive criminal intelligence information and active criminal investigative information."
[5] Rule 2.051(c) lists records of the judicial branch and its agencies that are confidential and thus exempt from public access. Subdivision (c)(9) provides that court records determined to be confidential in a case decision or court rule may be exempt from public access on the grounds that:

(A) confidentiality is required to
(i) prevent a serious and imminent threat to the fair, impartial, and orderly administration of justice;
(ii) protect trade secrets;
(iii) protect a compelling governmental interest;
(iv) obtain evidence to determine legal issues in a case;
(v) avoid substantial injury to innocent third parties;
(vi) avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of proceeding sought to be closed;
(vii) comply with established public policy set forth in the Florida or United States Constitution or statutes or Florida rules or case law;...