The Honorable James T. "Tim" Moore Commissioner Florida Department of Law Enforcement Post Office Box 1489 Tallahassee, Florida 32302-1489
Dear Commissioner Moore:
You ask substantially the following question:
Will records relating to pawnbroker transactions delivered to the appropriate law enforcement officials pursuant to section 539.001, Florida Statutes, retain their confidential and exempt status if such records are submitted to the Florida Department of Law Enforcement for inclusion in its statewide pawnbroker database to which only law enforcement officers will have approved access?
In sum:
Records relating to pawnbroker transactions delivered to the appropriate law enforcement officials pursuant to section 539.001, Florida Statutes, retain their confidential and exempt status when such records are submitted to the Florida Department of Law Enforcement for inclusion in its statewide pawnbroker database to which only law enforcement officers will have approved access. The appropriation creating the statewide database makes no distinction in the treatment of records of transactions relating to firearms. Section 790.065, Florida Statutes, does not prohibit information contained in the pawnbroker transaction forms regarding the pawning of firearms from being placed in the statewide database system unless the individual pawning the firearm is a licensed importer, manufacturer, or dealer, nor does section 790.065 affect the collection of such information by law enforcement.
In considering this issue, a review of the history surrounding the creation of the database is relevant. The Florida Department of Law Enforcement (FDLE) and local law enforcement have attempted for several years to have legislation enacted that would make it mandatory for local law enforcement agencies to enter pawned property information into a centralized statewide database. During the 2000 legislative session, funds were appropriated to FDLE for the purpose of developing a statewide database to collect and disseminate information derived from pawnbroker transaction records. The purpose of the database is to allow investigators to search its contents to determine whether stolen property has been pawned elsewhere in the state. Companion legislation, however, which would have required the reporting of pawnbroker information to FDLE for inclusion in the database did not pass.[1] Therefore, any reporting by law enforcement agencies in the state would be on a voluntary basis only.
Utilizing the appropriated funds, FDLE has sought to implement the database by "populating" it with data submitted from local law enforcement on a voluntary basis. The database, according to your letter, is now ready to begin operation. Several sheriffs and police chiefs have expressed an interest in participating in this system, but have expressed concern about the confidentiality of the information once transferred to FDLE.
Given the history of the database's creation, consideration must be given as to how FDLE intends to implement operation of the database in order to resolve your inquiry. This office has been advised that information submitted to the database will include identifying information on items that have been pawned such as the serial number and physical description, as well as information regarding the person who pawned the property. Information relating to pawned property, other than firearms, would be retained by FDLE for up to two years before being purged from the central system. However, FDLE intends to maintain firearms information in the statewide database for only 48 hours in order conduct a "run" to determine if the firearm is stolen or the person pawning the gun is wanted by law enforcement.
You have stated that the differential treatment for firearms in the statewide database was due in part to the strong opposition by the United Sportsmen of Florida/National Rifle Association with respect to a statewide gun information database, as well as in recognition of the statutory procedures adopted by the Legislature directing FDLE how to handle firearms purchase information. The 48-hour period is apparently adapted from section 790.065(4)(a), Florida Statutes, which requires FDLE to destroy firearms approval information within 48 hours after the day of the response to a licensee's request for an approval number. You have indicated that until further direction from the Legislature, FDLE believes use of the 48-hour period is consistent with previous legislative direction and intent regarding retention of firearms-owner related data on a statewide basis by the department.
Section 790.065, Florida Statutes, relates to the sale or delivery of firearms by a licensed importer, manufacturer, or dealer to another person and requires that certain information be gathered and background checks be performed before such a sale or transfer may be completed. Section 790.065(4)(a) provides:
Any records containing any of the information set forth in subsection (1) pertaining to a buyer or transferee who is not found to be prohibited from receipt or transfer of a firearm by reason of Florida and federal law which records are created by the Department of Law Enforcement to conduct the criminal history record check shall be confidential and exempt from the provisions of s. 119.07(1) and may not be disclosed by the Department of Law Enforcement or any officer or employee thereof to any person or to another agency. The Department of Law Enforcement shall destroy any such records forthwith after it communicates the approval and nonapproval numbers to the licensee and, in any event, such records shall be destroyed within 48 hours after the day of the response to the licensee's request.
Recognizing that the above provision relates only to the sale or transfer of a firearm by a licensed importer, manufacturer, or dealer, this office has previously stated that the sale or transfer of a firearm by an individual pawning said firearm to a licensed pawnbroker falls outside the scope of this section unless such individual is a licensed importer, manufacturer, or dealer.[2] Thus, the subsection does not prohibit information contained in the pawnbroker transaction forms regarding the pawning of firearms from being placed in the statewide database system unless the individual pawning the firearm is a licensed importer, manufacturer, or dealer.[3]
By appropriating funding for the statewide database, the Legislature has indicated an intent for FDLE to develop a statewide system for the collection and dissemination of information derived from pawnbroker transaction records. Nothing in the appropriation of such funds indicates an intent by the Legislature that certain pawnbroker transaction records, i.e.,
those relating to firearms, were to be treated differently.
Moreover, it should be noted that section 790.065, Florida Statutes, which relates to information collected by FDLE, has no impact on the collection of such information by local law enforcement officers. The collection of such information by local law enforcement, and its confidentiality, is governed by the provisions of section 539.001, Florida Statutes.
Section 539.001, Florida Statutes, is the Florida Pawnbroking Act. Subsection (9)(a) of the statute requires in part:
"On or before the end of each business day, the pawnbroker must deliver to the appropriate law enforcement official the original pawnbroker transaction forms for each of the transactions occurring during the previous business day, unless other arrangements have been agreed upon between the pawnbroker and the appropriate law enforcement official."[4]
"Appropriate law enforcement official" is defined to mean the sheriff of the county in which a pawnshop is located or, in the case of a pawnshop located within a municipality, the police chief of the municipality in which the pawnshop is located. A sheriff or police chief, however, may designate any law enforcement officer working within the county or municipality headed by that sheriff or police chief as the appropriate law enforcement official.[5]
Section 539.003(1), Florida Statutes, states that all records relating to pawnbroker transactions delivered to appropriate law enforcement officials pursuant to section 539.001, Florida Statutes, are confidential and exempt from the provisions of section 119.07(1), Florida Statutes, and section 24(a), Article I, Florida Constitution, and may be used only for official law enforcement purposes. The statute does not prohibit the appropriate law enforcement officials from disclosing the name and address of the pawnbroker, the name and address of the conveying customer, or a description of pawned property to the alleged owner of pawned property.
You state that it is your opinion that the submission of the information to the statewide pawnbroker database maintained by FDLE constitutes an official law enforcement purpose and that the information will remain confidential. However, you seek this office's assurances that the information, once transferred to FDLE, will remain confidential and exempt as provided by section539.003, Florida Statutes.
The courts and this office have addressed similar issues in the past. In Ragsdale v. State,[6] the Supreme Court of Florida concluded that the applicability of a particular exemption is determined by the document being withheld, not by the identity of the agency possessing the record. The Court stated:
"[T]he focus in determining whether a document has lost its status as a public record must be on the policy behind the exemption and not on the simple fact that the information has changed agency hands. Thus, if the State has access to information that is exempt from public records disclosure due to confidentiality or other public policy concerns, that information does not lose its exempt status simply because it was provided to the State during the course of its criminal investigation."[7]
In coming to this conclusion the Court relied on an earlier case,City of Riviera Beach v. Barfield.[8] In the Barfield case documents were given by one agency to another during an active criminal investigation. Those seeking access to these records argued that the transfer of a document from one agency to another nullified the exempt status of the record. The court rejected this argument:
"We conclude that when a criminal justice agency transfers protected information to another criminal justice agency, the information retains its exempt status. We believe that such a conclusion fosters the underlying purpose of section 119.07(3)(d), which is to prevent premature public disclosure of criminal investigative information since disclosure could impede an ongoing investigation or allow a suspect to avoid apprehension or escape detection. In determining whether or not to compel disclosure of active criminal investigative or intelligence information, theprimary focus must be on the statutory classification of theinformation sought rather than upon in whose hands the informationrests. Had the legislature intended the exemption for active criminal investigative information to evaporate upon the sharing of that information with another criminal justice agency, it would have expressly provided so in the statute."[9] (e.s.)
While the information sought in the Ragsdale case was not information currently being used in an active criminal investigation, the Court extended the policy rationale expressed above in Barfield.[10] Similarly, in Attorney General Opinion 99-01 this office concluded that the fact that federal criminal history records compiled on school personnel are federal records subject to limited disclosure controlled their public disclosure, rather than the fact that the school district may have possession of them.[11]
Clearly then, it is the identity of the record itself and not the identity of the agency holding the record that determines whether any exemption from disclosure applies. In the instant inquiry, the information is being transferred to FDLE for law enforcement purposes, i.e., for use by law enforcement officers around the state to determine whether lost or stolen property has been pawned.
Accordingly, I am of the opinion that records relating to pawnbroker transactions delivered to the appropriate law enforcement officials pursuant to section 539.001, Florida Statutes, retain their confidential and exempt status if such records are submitted to the Florida Department of Law Enforcement for inclusion in its statewide pawnbroker database to which only law enforcement officers will have approved access.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, e.g., HB 1937 (2000). And see, HB 2389 (2000) which was linked to HB 1937 (2000) and created an exemption from disclosure for records relating to pawnbroker transactions submitted to FDLE pursuant to s. 1 of HB 1937. According to your letter, legislation proposed during the 2001 Legislative Session failed to pass due to strong opposition by the Unified Sportsmen of Florida (USF) and the National Rifle Association (NRA) which were concerned that the statewide database could (in addition to its crime-fighting purpose) become a centralized governmental database of legitimate owners of firearms. See, "State Likes NRA's Idea To Purge Gun Details," Orlando Sentinel, May 31, 2001.
[2] Informal Opinion to James T. "Tim" Moore, dated June 12, 2001.
[3] The informal opinion also concludes that s. 790.065(4)(c), Fla. Stat., does not prohibit FDLE from maintaining firearm information on the statewide database. The statute, which states that "[n]othing in this chapter shall be construed to allow the State of Florida to maintain records containing the names of purchasers or transferees who receive unique approval numbers or to maintain records of firearm transactions," only provides that nothing in Ch. 790, Fla. Stat., authorizes the state (or FDLE) to maintain records of firearms transactions. The authority for FDLE to maintain the information contained in the pawnbroker transaction forms required by Ch. 539, Fla. Stat., is found elsewhere, i.e., in the legislative appropriation for a pawnbroker transaction database.
[4] A copy of each completed pawnbroker transaction form must be kept on the pawnshop premises for at least 1 year after the date of the transaction. When an electronic image of a pledgor or seller identification is accepted for a transaction, the pawnbroker must maintain the electronic image in order to meet the same record keeping requirements as for the original transaction form. If a criminal investigation occurs, the pawnbroker shall, upon request, provide a clear and legible copy of the image to the appropriate law enforcement official. And see, s. 539.001(8), Fla. Stat., specifying the information that must be contained on a pawnbroker transaction form.
[5] Section 539.001(2)(b), Fla. Stat.
[6] 720 So.2d 203, 205 (Fla. 1998).
[7] Id. at 206.
[8] City of Riviera Beach v. Barfield, 642 So.2d 1135 (Fla. 4th DCA 1994), rev. den., 651 So.2d 1192 (Fla. 1995).
[9] Id. at 1137.
[10] Cf., State v. Buenoano, 707 So.2d 714 (Fla. 1998) (restricted access documents provided to state attorney by federal government pursuant to loan agreement remained exempt from public inspection even though documents were inadvertently given to defendant and placed in court record in violation of conditions of federal loan agreement); and Alice P. v. Miami Daily News, Inc.,440 So.2d 1300 (Fla. 3d DCA 1983), rev. den., 467 So.2d 697
(Fla. 1985) (confidential birth information contained in license application submitted to state health agency not subject to disclosure).
[11] Cf., Ops. Att'y Gen. Fla. 94-48 (1994) (information contained in the statewide, integrated violent crime information system constitutes active criminal intelligence and criminal investigative information and is exempt from disclosure); 96-36 (1996) (police department may provide active criminal investigative information to a private company for the purpose of the company's compilation and summation of the data for the police department; such active criminal investigative information would continue to remain exempt from disclosure).